Howlett *v.* Howlett.

LAURA HOWLETT *vs.* ALFRED A. HOWLETT.

P. H. being the owner of a farm, conveyed it in fee to his son, A. H., on the
14th of January, 1857. On the 13th of April, 1857, A. H. executed an
agreement with P. H., reciting that being disposed to make a suitable and
proper provision for his father, and for his brothers and sisters after the
father's death, he did covenant and agree to allow P. H. to possess, manage
and carry on the farm, during his life, and to take, receive and use the profits
and income thereof; that P. H. might pay the interest on $8500, the price
paid by A. H. for the farm, annually, and in case it should not be paid, then
that it should be added to the principal; that he would, at the decease of
P. H. convey the premises in fee to the children of P. H. and to each of them,
and in such proportions as P. H. should by will appoint, and in case of fail-
ure to appoint, then to them equally, upon payment to him of said sum of
$8500 and its accumulations. P. H. subsequently married the plaintiff, and
on the 9th of December, 1859, A. H. made an indorsement upon the above
agreement, by which he agreed to pay the plaintiff $1000 within one year
after the death of P. H., which sum should be refunded to him, in addition
to the sums mentioned in the previous agreement, before he should be
required to make any conveyance of the farm. On the 1st of May, 1861,
P. H. executed a will, by which he gave and devised to his daughter F. all
the right, title and interest which he had in and to the farm, and all the right
therein which he had, to dispose of by will; and directed her to pay one
third of all she realized from it to his wife, the plaintiff, and one third thereof
to their daughter P. And he devised and bequeathed all the residue of his
estate, real and personal, to the plaintiff.

*Held,* 1. That the will of P. H. only passed to the plaintiff the title to the per-
sonal estate after payment of his debts; and that so much thereof as pur-
ported to give any interest in the farm either to the plaintiff or P. her
daughter, was inoperative.

2. That the plaintiff not only had no title or interest in the farm, but she had no interest in any equity of redemption therein; and P. H. had no such equity; the only equity of redemption, or rather, right to require a conveyance from A. H. being vested in his brothers and sisters, to be exercised only after the death of their father.

Parol evidence is admissible to show that a sum of money paid upon a promissory note given subsequently to the execution of a written agreement is the same sum mentioned in and agreed to be paid, in such agreement.

Parol evidence may be received to show that a promissory note was included in a release of " all claims upon the estate" of a deceased person.

An assignment or release cannot be contradicted and made to include demands which its terms exclude. As a· general rule, nothing can be added to the subjects contracted for, by parol proof which extends the contract beyond the subjects specified in it.

When the subjects are specifically stated in the contract, and they are assigned or released, and there is added thereto a general release or assignment of all other claims, demands or property, *as a general rule it will be held that the* general words do not enlarge the scope and effect of the instrument; but that it operates only upon the ·subjects specifically stated in it.

When the words used in a release are general, the true question is, may they not have been intended to include a particular claim, by the language used; and if they may, then extraneous evidence may be given, to apply the ambiguous words to their true subject or subjects.

Where the terms of a release were that one party released and assigned to the other " all claims upon the estate of P. H.," which she had " of, in and to the estate, real and personal, of P. H., deceased," except certain personal property; *Held* that there was no limitation of the claims assigned and released, except that they were such as the releasor had against the estate (real or personal) of P. H. And that it was competent to prove by parol, in aid of the construction of the instrument, admissions of the releasor as to the payment of a claim of $1000, the ultimate liquidation or reimbursement of which was to come from the proceeds of the real estate, and which the parties had treated as a claim upon the real estate, although it was not strictly·of that nature, in a legal sense; and that the parties had reference to it in the language which they used.

*Held* also, that no contradiction or enlargement of the scope of the release was produced, or any violence done to its language, by showing that in fact the parties intended to include the $1000 claim.

APPEAL from a judgment in favor of the defendant, entered on the report of a referee.

As the case shows, Parley Howlett was the owner of a farm of about 280 acres, situate in the town of Onondaga, and on the 14th day of January, 1857, he deeded it in fee

Howlett *v.* Howlett.

to the defendant Alfred A. Howlett, his son by his first wife.

On the 13th day of April, 1857, Alfred A. Howlett executed to his father the following agreement, of that date : " Whereas the undersigned is the owner in fee by deed dated January 14th, 1857, of the farm in Onondaga, known as the Parley Howlett farm, and containing about 280 acres, &c., executed by the said Parley Howlett and wife. And whereas the said Alfred Howlett purchased said farm for the sum of eight thousand and five hundred dollars, which he has paid therefor, and the said Alfred being disposed to make a suitable and proper provision for his father, the said Parley, and for his brothers and sisters, of the whole blood, after the death of his father, does hereby, in consideration of love and affection, and for a valuable consideration to him paid, undertake, covenant and agree to allow the said Parley Howlett to possess, manage and carry on said farm during his natural life, or as long as he shall choose to do so; and to take, receive and use the profits and income thereof, he keeping the same in good ordinary repair and condition. He further agrees that the price paid for said farm by him was $8500 ; and he further agrees that the said Parley Howlett may pay the interest on that sum annually; and in case he does not choose to pay it annually, that it shall then be added to the said principal sum, and regarded as a new principal, on which interest is to be cast and paid annually thereafter, until the death of said Parley Howlett. And he doth further covenant and agree that at the decease of the said Parley Howlett, he will convey in fee to said children of Parley Howlett, being his brothers and sisters of the whole blood, and to each of them, and in such proportions as the said Parley shall by will appoint; and in case he makes no appointment, then to them equally, the whole of said premises, upon being paid or secured to be paid to his satisfaction, in such time as he, said Alfred, shall require, and not less than one year from

such decease, the sum of $8500, and its accumulations of principal and interest as aforesaid."

He further provides that in case he makes any payments for any permanent improvements on said property, whatever he pays therefor shall be added to the $8500 and interest, and shall go to form a new principal at the end of the year.

"It is further understood and agreed that said Alfred has already incumbered said farm $5000 for his own benefit; and in case any incumbrance exists on said farm, at the decease of said Parley Howlett, which has been put on for his, said Alfred's, benefit, then said incumbrance is to be deducted from the amount to be paid him as aforesaid.

And it is further understood and agreed that in case said Parley appoints by his will a conveyance of said farm in unequal proportions to said children, that each shall pay of the debt to said Alfred, according to the proportion which he or she may receive."

On the 13th of December, 1858, Parley Howlett was married to the plaintiff, and on the 9th of December, 1859, Parley Howlett and Alfred A. Howlett indorsed upon the aforesaid contract, under their hands, the following agreement:

"The subscribers agree, for value received, that the ubscriber Alfred A. Howlett, shall pay to Laura, the wife of the subscriber Parley Howlett, $1000 within one year from and after the death of said Parley, and that sum shall be refunded to said Alfred, in addition to the sums mentioned within, before he shall be required to make any conveyance of the farm within described. This agreement to be void in case said Parley outlives said Laura."

Parley Howlett had by the plaintiff one child, (Phebe L. Howlett,) who was living at the time of the trial. On the 1st day of May, 1861, he executed his last will and testament, by which he gave and devised to his daughter

Frances C. Gardner (one of his children by his first wife) all the right, title and interest which he had in and to the said farm, and all the right which he had therein to dispose of by will; and directed that she pay one third of all she realized from it to his wife Laura, and one third thereof to their said daughter Phebe L. And he devised and bequeathed all the residue of his estate, real and personal, to Laura, and appointed her sole executrix.

On the 18th of May, 1861, Parley Howlett died, leaving children by his first wife him surviving.

After the death of Parley Howlett the plaintiff and defendant entered into a negotiation, and on the 5th of July, 1861, they both executed the following agreement:

"It is agreed between Alfred A. Howlett and Laura Howlett, as follows: Said Alfred gives to the said Laura his note for $1000, payable January 1st, 1862, at the Salt Springs Bank, Syracuse. He also releases to her, and allows her to retain the cow, known and described as 'Nellie,' on the farm on which said Laura now resides, in Onondaga, and keep the same for said Laura on said farm, until the 1st of November next." He agrees to give her sundry articles of personal property, specifically mentioned in the agreement. And it was further agreed that the said Laura was to have all the furniture in the house, which she took there when she married Parley Howlett, deceased, and all she had purchased since, and all the furniture in the house except those articles belonging to, or connected with the dairy, and such other articles as the daughters of Parley Howlett, by his first wife, might thereafter desire, which belonged to their mother.

"It is also agreed by the parties hereto, that said Laura shall remain in the house where she now lives, and take charge of and superintend the business thereof, in the same careful and prudent manner in which she heretofore has, until the 1st day of November, 1861; and for which services the said Alfred agrees to pay her the sum of $1.50 per

week, from the 18th day of May, 1861, the day on which said Parley Howlett, deceased, died, until the 1st day of November, 1861.

On said 1st day of November, 1861, the said Alfred agrees to move the said Laura, her goods, chattels and effects, except said four cords of wood, at his own expense, to such place within the county as said Laura may direct.

The said Alfred covenants and agrees to and with said Laura to pay and satisfy all the debts due and owing by his father Parley Howlett, deceased, in his lifetime, not exceeding $1200, and to indemnify and save harmless said Laura from any or either of them; and from all debts of said Laura, from any or either of them, and from all debts of said Parley, deceased. The said Laura agrees to and with said Alfred, and does hereby release and assign to him all claims upon the estate of said Parley Howlett, deceased, which she has of, in and to the estate, real and personal, of said Parley Howlett, deceased, except the property above named, which she is to have. She also agrees to renounce her right to act as executrix of said Parley Howlett, deceased, under his will, and consents that the said Alfred be appointed administrator with the will annexed of the estate of said Parley Howlett, deceased."

At the time of the execution of the agreement, the defendant executed and delivered to the plaintiff the promissory note specified in it, and she received and had all the personal property which by the agreement was released to her, and all the consideration expressed therein, and she renounced as executrix, and Alfred A. Howlett was afterwards appointed administrator of the estate of his father, with the will annexed.

The contract between the defendant and his father, of the 13th of April, 1857, together with their aforesaid indorsement thereon, was then in the plaintiff's hands, and was not present when the agreement of the 5th of July, 1861, was made.

Parley Howlett left no other real estate ; and the proceeds of all the personal estate which he left was $1401, over and above that which the plaintiff received, and the defendant as administrator paid and discharged debts against the deceased to the amount of $1370.

On the trial, and while the defendant was testifying, his counsel asked him, " Was the $1000 mentioned in the agreement (of July 5th, 1861) the $1000 provided for in the agreement of December 9th, 1869 ?" This was objected to by the plaintiff's counsel, as incompetent and inadmissible ; and it was claimed that the contract of July 5th, 1861, must be deemed to contain the whole agreement, and could not be varied by parol. The referee overruled the objection, and admitted the evidence. The plaintiff's counsel excepted, and the witness testified " that he said to Mr. Gott," (who was then the counsel for the plaintiff, and she being present,) " the bond is payable May 18th next ; that Gott replied, ' The difference is but little, and it can't make but little difference to you ; Laura needs the money to pay the mortgage on her brother's place ;' he wanted witness to give his note payable November 1st ; that she could use it in case she needed the money ; that witness replied, ' I will give the note payable the 1st of January, and if I am in a situation to pay it November 1st, I will pay it, deducting the interest ;' before the witness signed the note, he said to Laura that he wanted to take up the bond ; she said she had forgotten to bring it with her ; she did not have it with her ; Mr. Gott said it did not make any difference ; that the writing cut the bond off ; then I signed the papers and gave the note ; I paid the note November 19, 1861, paying by a check of that date ; interest was deducted ; the bond spoken of is the contract of December 9th, 1859 ; at the time I gave my check, I did not ask for the old bond." *Cross-examined :* " At the first interview nothing was done ; there was some wheat on the farm, and some corn ; don't know how much ;

there were seven or eight acres of oats; there were 300 bushels of oats at Belleisle, which were sold; I don't remember any one being present at the negotiation, except Daniel F. Gott; don't recollect of any woman being present; plaintiff was to take such furniture as she took there; I made the remark that I did not think there was enough property to pay the debts; I paid $900 of debts, besides that he owed me. The inventory was made out September 5th, 1861; I thought the cows were prized fair; I did not offer the plaintiff $700 to settle the matter; have no recollection of making any offer at all; all I offered to deduct was the interest; don't think I took Gott out and spoke to him; the inducement to settling was, that she might get the $1000 sooner."

Several witnesses testified to declarations of the plaintiff, made in the fall of the year 1861, in which she admitted, substantially, that the defendant had paid her all that was coming to her; that he had paid her the bond, deducting the interest from the time of payment until it was due; that she was to give up the bond to him; that Mr. Gott said the note cut off the bond, and that she did not expect ever to receive anything more from the defendant, unless he had a mind to give it to her.

This testimony was all objected to, but admitted, to which the plaintiff excepted; all of which was contradicted by the testimony given by the plaintiff, except that she did not deny that the $1000 note was given for the $1000 specified in the bond, and she did not testify that it was for the personal property.

It was also proved by the testimony of the defendant, that the $1000 note was not given to the plaintiff for the personal property. And it was proved, and not disputed, that the plaintiff subsequently to the 5th of July, 1861, never made any claim against the defendant for the demand now in controversy, until the winter of 1866–7.

The referee found that the giving of the $1000 note,

payable the 2d of January, 1862, and the payment thereof in November, 1861, was a full payment, satisfaction and discharge of the sum of $1000 covenanted to be paid by the indorsement of the 9th of December, 1859, and that at the time of the commencement of the action the defendant did not owe the said $1000, or any part of it. Judgment was entered for the defendant, and the plaintiff appealed.

*Daniel Pratt,* for the appellant.

*Charles B. Sedgwick,* for the respondent.

*By the Court,* FOSTER, J.  The will of Parley Howlett did not give to the plaintiff any title or interest in the farm in question. It only passed to her the title to the personal estate after payment of his debts. And it appears that after deducting such portion of it as she received under the agreement of July 5th, 1861, the whole residue, after debts were paid, was $31; so that she actually received (less $31) the whole of that residue. And she received from the defendant a much larger amount than that, in wood and products from the farm, raised and produced after the death of her husband.

She not only had no title or interest in the farm, but she had no interest in any equity of redemption therein; and Parley Howlett had no such equity. As between him and Alfred Howlett the agreement of April 13th, 1857, was not a mortgage.

By the deed of January 14th, 1857, he conveyed the fee to the defendant, and the instrument of April 13th recited that Alfred executed it "because he (Alfred) was disposed to make a suitable provision for his father, and for *his brothers and sisters of the whole blood.*"  And as will be seen by the terms of it, the right of Parley Howlett was thereby

limited to the use of it in a proper manner during his life, with liberty, if he chose, to pay the interest on the $8500 to prevent accumulation, and to declare by his will, in what proportions Alfred A. should deed it to his children by his first wife, upon receiving from them their proper shares of the payments with which that agreement charged it. But he had no right at any time during his life, upon the tender of such sum, to require a conveyance of the farm, or any portion of it, to himself or to any other person. And it was only by the mutual agreement between him and Alfred, that the provision for the $1000, which was made for the plaintiff, could be charged upon it. The only equity of redemption, therefore, or rather right to require a conveyance from Alfred, was vested in his brothers and sisters of the full blood, to be exercised only after the death of the father. And if those brothers and sisters had died before the death of Parley, the absolute and unconditional title would have belonged to Alfred, and no will or appointment of Parley Howlett could have prevented it. It follows, necessarily, that so much of the will as purported to give any interest in the farm, either to the plaintiff or her daughter Phebe, was inoperative. So, too, if Parley had made no will, the rights of the plaintiff and her daughter would have been the same, and at his death the whole farm would have vested absolutely in the defendant, or in his full brothers and sisters, in equal proportions, on payment to him by them of their respective shares; and whether in him or them, it is, so far as this case is concerned, wholly immaterial to inquire; it being enough that the plaintiff would have had no right in it.

Of course the plaintiff had no right to the possession of the farm after her husband's death, which would form a legal consideration for the giving of the $1000 note.

We are to assume that the parties were aware of their legal rights, for such is the legal presumption; and the

Howlett *v.* Howlett.

proof does not disclose any legal right on her part, except to the residue of the personal estate which she was entitled to under the will, and her claim under the indorsement of December 9th, 1859.

The question then is, whether the parol proof that the $1000 note was given for the $1000 mentioned in the agreement of December 9th, 1859, or that was included in the claims released, and assigned by the plaintiff, was competent.

There is no doubt that a written agreement, such as that between the plaintiff and defendant, cannot be contradicted and made to include demands which its terms exclude. As a general rule nothing can be added to the subjects contracted for, by parol proof, which extends the contract beyond the subjects specified in it. So too when subjects are specifically stated in the contract, and they are assigned or released, and there is added thereto a general release or assignment of all other claims, demands or property. As a general rule, it will be held that the general words do not enlarge the scope and effect of the instrument; but that it operates only upon the subjects specifically stated in it. These questions are pretty familiar.

It is also the rule that an assignment or release which is general in its terms, applies to all claims, demands or property, which come within its general language; and this rule has but few if any exceptions.

The language of the clause in question is, "the said Laura agrees to and with said Alfred, and does hereby release and assign to him all claims upon the estate of said Parley Howlett, deceased, which she has, of, in or to the estate, real and personal, of said Parley Howlett, deceased, except the property above named, which she is to have." And this is all the agreement on her part, except that she will renounce the executorship. There is, therefore, no limitation of the claims assigned and released by her, ex-

cept that they are such as she has against the estate (either real or pers nal) of the deceased.

Now the question is not whether the parties in framing the contract have used words which are apt or most appropriate; or whether they express correctly their meaning. For when the language is ambiguous, they will be allowed to prove what was intended. Nor is it material that what the parties agreed for, were really *claims* or *demands against the estate ;* provided it appears that at the time of making the instrument, and in the instrument itself, they were called and understood to be such. As where a conveyance misdescribes the property intended to be granted or sold, either as to its location, or by a misdescription of the name of the grantee, the party interested will be allowed to show the misdescription, by proving that the grantor had no land situate in the place stated in the deed, but had just such as the deed described in another place; or by showing that the claimant was the person intended as grantee, devisee or legatee in the instrument in question ; and this although the proof is in some respects in direct conflict with the language of the instrument.

It is also a rule of construction, that all the language of the instrument applicable to the question in issue shall have effect, if possible, without doing violence to it. The plaintiff, as I have said, had no legal claim to anything more than the residue of the personal estate; nor does it appear that at or before the 5th of July, 1866, she made any claim for anything else. And yet she assigns and releases to the defendant all her claims upon the estate *real* and personal, *excepting the personal property therein specified.*

Now, why release claims upon the real estate if it was not intended to include the $1000 in question. That was all the claim she had, in any way relating to his real estate ; and if that claim was not intended, those words were entirely superfluous.

Howlett *v.* Howlett.

The objection to this is, why did they not then specify *that claim* clearly, so as to leave no doubt of its being intended. But it might as well be asked, why has there ever been a latent ambiguity in a written instrument, where the parties might have, if they chose, expressed clearly their intent. It is enough to say that the words used are general, and the true question is, may they not have been intended to include the $1000 claim, by the language used; and if they might, without doing violence to the words used, the extraneous evidence may be given, to apply the ambiguous words to their true subject or subjects. I think it was competent to prove what was admitted, in order to aid in the construction of the instrument. That although *that* claim of $1000 was not strictly in a legal sense a claim upon the estate, yet that as its ultimate liquidation or reimbursement was to come from the proceeds of that farm, the parties treated it as a claim upon the real estate, and had reference to it in the language which they used, and that no contradiction or enlargement of the scope of the release was produced, or any violence done to its language, by showing that in fact the parties intended to include the $1000 claim.

The declarations of the plaintiff, frequently repeated, late in that fall, after the note was paid up, and her subsequent conduct, till a short time before the suit was commenced, strongly corroborate the oral testimony on the part of the defendant, that the intent of the instrument was to convey to him the claim of $1000 against the estate without further payment to her than the payment of the note.

And all this proof I think was competent, under the principles above laid down.

So far as there was conflict in the parol evidence, the referee was the proper person to decide it, and there is nothing in the case which would authorize us to reverse such decision. On the contrary, the weight of evidence

appears to be decidedly in favor of the conclusion to which he arrived. And upon the whole case it appears that as between the defendant and plaintiff, the latter has received all to which she was equitably entitled.

The judgment should be affirmed.

[ONONDAGA GENERAL TERM, October 6, 1868. *Foster*, *Mullin* and *Morgan*, Justices.]